PR/USAO#2021R00148

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SEALED

USDC – BALTIMORE
'23 JUN 14 PM 3:32

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** RDB23cr210 |
| **v.** | : | |
| | : | **(Wire Fraud, 18 U.S.C. § 1343; Money** |
| **DAVID EPSTEIN,** | : | **Laundering, 18 U.S.C. § 1957;** |
| | : | **Forfeiture, 18 U.S.C. § 981(a)(1)(C); 21** |
| **Defendant.** | : | **U.S.C. § 853(p); 28 U.S.C. § 2461(c))** |
| | : | |
| | : | **UNDER SEAL** |

...oOo...

**INDICTMENT**

**COUNT ONE**
**(Wire Fraud)**

The Grand Jury for the District of Maryland charges that:

**Introduction:  Relevant Persons, Entities, And Accounts**

At all times relevant to the Indictment, unless otherwise stated:

1.      Defendant **DAVID EPSTEIN ("EPSTEIN")** was a resident of Baltimore County, Maryland.

2.      On or about August 25, 2010, **EPSTEIN**'s family member ("Family Member #1"), incorporated a business with state of Maryland called PEI Staffing, LLC ("PEI"). **EPSTEIN** was the Chief Executive Officer of PEI from in or about January 2000 to the date of this Indictment.

3.      **EPSTEIN** also served as the President of Stafquik, Inc. ("Stafquik"), a business incorporated in the State of Maryland on or about May 2, 2016 and incorporated in the State of Delaware on or about October 16, 2017.

4.      Stafquik maintained an account at SunTrust Bank ("SunTrust"), a federally insured financial institution, with account numbers ending in 2836 ("the 2836 Account") and 5615 (the "5615 Account"). **EPSTEIN** was the sole signatory on the 2836 Account and the 5615 Account.

1

5.      Celtic Bank was a federally insured financial institution headquartered in Salt Lake City, Utah and specialized in small business finance. Celtic Bank was a United States Small Business Administration ("SBA") Preferred Small Business Lender and participated as a lender in the Paycheck Protection Program ("PPP").

6.      Blue Vine was a financial technology company headquartered in California that provided online business banking and financing to small and medium-sized businesses. Blue Vine served as an originating agent for financial institutions such as Celtic Bank. Blue Vine used a server located in West Virginia for the purpose of receiving PPP loan applications.

**The Paycheck Protection Program**

7.      The PPP was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

8.      To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses and substantiating that the borrowing business was in operation before or on February 15, 2020, such as filed federal income tax documents.

9.      PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located outside of the District of Maryland.  Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

10.      The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

## EIDL Loans

11.      In order to obtain an EIDL, a small business submitted an electronic EIDL application (SBA Form 5) directly to SBA via its website, covid19relief.sba.gov. The EIDL application was certified by an authorized representative of the business.  The EIDL application required the business, through its authorized representative, to acknowledge the program rules and to make certain certifications in order to be eligible for the EIDL loan.

12.      The authorized representative of the small business certified eligibility information. Further, the authorized representative submitted combined annual operating expenses for the 12 months prior to January 31, 2020 as well as gross revenues and costs of goods sold for that same period. Loans were calculated based on 6 months of gross revenues minus cost of goods sold. Applicants could also receive a grant known as an EIDL advance up to $10,000 calculated as a $1,000 grant per employee up to a maximum of $10,000.

13.     An EIDL application was processed by the SBA.  If an EIDL application was approved, the SBA directly funded the loan through a deposit to a bank account of the business borrower.

14.     EIDL proceeds were required to be used by the business on certain permissible expenses—fixed debts including rent and utilities, payroll, accounts payable and other bills resulting from the pandemic.  The EIDL program lent the money at a fixed annual percentage rate.

### The Scheme to Defraud

15.     Beginning in and around May 2020 and continuing through in and around August 2020, in the District of Maryland and elsewhere, the defendant,

### DAVID EPSTEIN,

knowingly and willfully devised and intended to devise a scheme and artifice to defraud the SBA, Celtic Bank, and Blue Vine to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343 (the "scheme to defraud").

### The Object of the Scheme to Defraud

16.     It was the object of the scheme to defraud for **EPSTEIN** to personally enrich himself by fraudulently obtaining and attempting to obtain EIDL and PPP loan funds for his own personal use and benefit, and for the personal benefit and use of his associates, including payments for the purchase of a Mercedes-Benz automobile, renovations to **EPSTEIN**'s home and the installation of a pool there, and other unauthorized expenditures.

### Manner and Means of the Scheme to Defraud

It was part of the scheme to defraud that:

PPP Loan for PEI ($1,307,170.00)

17.    On or about April 30, 2020, **EPSTEIN** submitted and caused to be submitted a false and misleading PPP loan application to Celtic Bank, through Blue Vine, in the name of PEI, seeking approximately $1,307,170.00 in PPP funds.

18.    In the application, **EPSTEIN** made and caused to be made false statements, misrepresentations and omissions related to PEI including the number of PEI employees, the wages paid to PEI employees, and the intended use of the PPP loan proceeds.

19.    In the application, **EPSTEIN** falsely promised to spend PPP funds on allowable expenses such as payroll, business rent and business utilities when he intended to spend the funds on personal expenses and other unauthorized expenditures.

20.    In the application, **EPSTEIN** attested that the information presented in the application and all supporting documents and forms to obtain the loans were true and accurate.

21.    In the application, **EPSTEIN** falsely stated that PEI had 382 employees.  In fact, a 2020 IRS Form 941 for PEI for the second quarter of 2020, listed 79 employees for PEI.

22.    In the PPP loan application, **EPSTEIN** falsely answered "NO" to the following question:  "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A."  In fact, when submitting the applications, **EPSTEIN** was a common manager of both PEI and Stafquik:  **EPSTEIN** was the Chief Executive Officer of PEI and the President of Stafquik.

23.    In the PPP loan application, **EPSTEIN** provided a bank account number into which PPP loan proceeds were deposited, namely the 2836 Account at SunTrust.

24.    On or about April 28, 2020, **EPSTEIN** placed a phone call to Blue Vine in which **EPSTEIN** and a Blue Vine representative discussed the status of the PPP loan application.  During

that call, **EPSTEIN** stated that he planned to upload a February 2020 bank statement for the 2836 Account at SunTrust in connection with the PPP loan application.

25.     In connection with the application, **EPSTEIN** submitted a fictitious bank statement, which falsely indicated that the 2836 Account at SunTrust was in the name of PEI, when the 2836 Account at SunTrust was in truth and in fact in the name of Stafquik.

26.     On or about April 30, 2020, **EPSTEIN** used the Internet Protocol (IP) address associated with his residence in Baltimore County, Maryland, namely IP address 68.134.115.171, when applying for the PPP loan for PEI.

27.     On or about April 30, 2020, **EPSTEIN** caused interstate wire communications from Maryland to West Virginia, the location of Blue Vine's server, when applying for the PPP loan for PEI.

28.     On or about May 4, 2020, **EPSTEIN** caused Celtic Bank to distribute approximately $1,307,170 through an ACH transfer sent to the 2836 Account at SunTrust.

29.     On or about May 4, 2020, **EPSTEIN** established personal accounts at SunTrust with account numbers ending in 2066 (the "2066 Account") and 5607 (the "5607 Account"). **EPSTEIN** was the sole signatory on these accounts.

30.     On or about May 8, 2020, **EPSTEIN** established personal accounts at Capital One Bank with account numbers ending in 3424 (the "3424 Account") and 3554 (the "3554 Account"). **EPSTEIN** was the sole signatory on these accounts.

31.     After the PPP loan funds were disbursed, **EPSTEIN** transferred PPP funds from the 2836 Account at SunTrust to the 2066 and 5607 Accounts at SunTrust and the 3424 and 3554 Accounts at Capital One.

32.     Beginning on or about May 5, 2020 and continuing until in or about August 2020, **EPSTEIN** caused PPP loan proceeds to be transferred and used for personal and unauthorized

6

expenses not permissible under the PPP, including the purchase of a luxury automobile, renovations to **EPSTEIN**'s home, the payment of various debts, and payments to various other associates.

33.     Among other transfers, on or about May 5, 2020, **EPSTEIN** transferred and caused to be transferred $110,356.48 in PPP funds from the 2836 Account at SunTrust to Mercedes Benz Financial Services in connection with a payment for a 2019 Mercedes-Benz GT53C4 automobile purchased by **EPSTEIN**.

34.     On or about May 7, 2020, **EPSTEIN** obtained an official check in amount of $20,000 from the 2836 Account at SunTrust, which **EPSTEIN** provided and caused to be provided to Lender 1, an entity which had in or about December 2019 provided a $50,000 loan to Stafquik. On the memo line of the check, **EPSTEIN** wrote "Rent payments May 2020/June 2020." In fact, the payment was not for rent, but instead for loan repayment to Lender 1.

35.     Beginning on or about May 20, 2020 and continuing through in or about August 2020 **EPSTEIN** transferred and caused to be transferred approximately $138,522.22 in PPP funds to a contractor ("Contractor 1") in connection with renovations to **EPSTEIN**'s home and installation of a pool there.

EIDL for Stafquick ($150,000)

36.     On or about November 18, 2020, **EPSTEIN** electronically submitted and caused to be submitted a false and misleading application for an EIDL to be submitted to the SBA, seeking approximately $150,000 in funds. On or about November 18, 2020, **EPSTEIN** falsely represented in the EIDL application that Stafquik had three employees and gross revenues of $428,571 as of January 31, 2020.

37.     On or about November 18, 2020, **EPSTEIN** provided the SBA a bank account number into which the EIDL proceeds were to be deposited, namely the 5615 Account at SunTrust.

38.     On or about November 19, 2020, SunTrust closed the 5615 Account after being notified by Celtic Bank that the $1,307,170.00 in PPP funds disbursed to the 2836 Account was an unauthorized transaction.   Because the 5615 Account was closed, the funds sought by **EPSTEIN** in the EIDL application for Stafquik were not ultimately disbursed.   On or about November 19, 2020, **EPSTEIN** placed a phone called to SunTrust seeking to reverse closure of the 5615 Account, but SunTrust did not reverse the closure.

## THE CHARGES

39.     On or about the dates set forth below, in the District of Maryland, the Defendant

## DAVID EPSTEIN

for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of a wire communication, certain signals, signs and sounds:  as set forth below:

| COUNT | DATE | DESCRIPTION | INTERSTATE WIRE COMMUNICATION DETAILS |
|-------|------|-------------|----------------------------------------|
| 1 | April 28, 2020 | Phone call from **EPSTEIN** to Blue Vine | From a location outside of Maryland |
| 2 | April 30, 2020 | Submission of PPP loan application for PEI | From Maryland to a location outside of Maryland |
| 3 | May 4, 2020 | ACH transfer of $1,307,170 from Celtic Bank to the 2836 Account at SunTrust | From Maryland to a location outside of Maryland |
| 4 | November 18, 2020 | Submission of EIDL Application for Stafquik | From Maryland to a location outside of Maryland |
| 5 | November 19, 2020 | Phone call from **EPSTEIN** to SunTrust | From Maryland to a location outside of Maryland |

18 U.S.C. § 1343

8

## COUNTS SIX, SEVEN, and EIGHT

The Grand Jury for the District of Maryland further charges:

      1.      Paragraphs 1 – 14 and 16 – 39 of Counts One to Four are incorporated here:

### THE CHARGES

      2.      On or about the dates listed below, in the District of Maryland and elsewhere, the

Defendant,

### DAVID EPSTEIN,

did knowingly engage and attempt to engage in a monetary transaction, by, through, and to a

financial institution, affecting interstate and foreign commerce, in criminally derived property of

a value greater than $10,000, that is the transfer and withdrawal of funds, as set forth below, such

property being derived from a specified unlawful activity, that is, wire fraud, in violation of 18

U.S.C. § 1343:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|
| 6 | May 5, 2020 | ACH transfer in the amount of $110,356.48 from the 2836 Account at SunTrust to Mercedes-Benz Financial in connection with a payment for a 2019 Mercedes-Benz GT53C4 automobile purchased by **EPSTEIN**. |
| 7 | May 7, 2020 | Official check in the amount of $20,000 from the 2836 Account at SunTrust that **EPSTEIN** provided and caused to be provided to Lender 1. |
| 8 | May 21, 2020 | Check in the amount of $28,000 from the 3424 Account at Capital One with the memo line "pool deposit" that **EPSTEIN** provided and caused to be provided to Contractor 1. |

18 U.S.C. § 1957

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under any of the offenses in Counts One through Eight of this Indictment.

### Wire Fraud Forfeiture

2.      Upon conviction of any of the offenses set forth in Counts One through Five of this Indictment, the defendant,

### DAVID EPSTEIN

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.

### Money Laundering Forfeiture

3.      Upon conviction of any of the offenses set forth in Counts Six through Eight of this Indictment, the defendant,

### DEFENDANT,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in the offenses, or any property traceable to such property.

### Property Subject to Forfeiture

4.      The property to be forfeited includes, but is not limited to, a money judgment in the total amount of proceeds the defendant obtained as the result of the scheme to defraud and/or the property involved in the money laundering.

10

**Substitute Assets**

5.      If any of the property described above, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. §§ 982(a)(1), (b)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)
Fed. R. Crim. P. 32.2(a)

*Erek L. Barron* /s/
Erek L. Barron
United States Attorney

A TRUE BILL

# SIGNATURE REDACTED

Foreperson

Date:   6/14/2023

11